**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| QUINCY BIOSCIENCE, LLC, | ) |
| Plaintiff, | ) Case No. 1:13-cv-1855 |
| v. | ) |
| PETA, LLC d/b/a THE HCF COMPANY and JUSTIN PETA, an individual | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff, Quincy Bioscience, LLC (hereafter, "Plaintiff" or "Quincy"), by and through its attorney, Ryan M. Kaiser of Amin Talati, LLC, and complains of Defendants, PETA, LLC d/b/a The HCF Company and Justin Peta ("Defendant" or collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1. This is an action for: (1) Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(a); Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); False Advertising under Section 43(a) the Lanham Act, 15 U.S.C. § 1125(a); Violation of the Deceptive Trade Practices Act of Illinois, 815 ILCS 510/2; Common Law Commercial Disparagement; Defamation *Per Se;* and Tortious Interference With Prospective Business.

2. Plaintiff's complaint arises from a deceptive and unlawful Internet marketing scheme in which Defendants use false and misleading advertising masquerading as "unbiased" third-party reviews and "health professional" recommendations to promote Defendants' own product while denigrating all competing products (including Plaintiff's) as inferior and sometimes dangerous.

3. Defendants purchased keyword advertisements using Plaintiff's federally registered PREVAGEN trademark as a keyword on various search engines such as Google and Yahoo!. As a result, consumers searching for PREVAGEN find Defendants' advertisements posted as "Sponsored Links," often ranking higher than Plaintiff's official <prevagen.com> site. Consumers who click Defendants' "Sponsored Link" are taken to Defendants' "review" site, where Defendants' competing product is marketed and sold.

4. Consumers looking for Plaintiff's PREVAGEN product are lured to Defendants' own websites where Defendants' fabricated "product reviews" and "testimonials" then promote Defendants' "top rated" and "expert recommended" product.

5. Plaintiff seeks injunctive relief, compensatory and punitive damages, as well as payment of its reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367; and 15 U.S.C. § 1121.

7. This Court has jurisdiction over Defendants because Defendants each have sufficient minimum contacts with this State and the maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice. Such contacts include, without limitation: Defendants knowingly market and place their products in the stream of commerce for consumption by citizens of the Northern District of Illinois; upon information and belief, Defendants solicit customers and do business generally within this forum; and Defendants maintain an interactive website promoting their Product to citizens of the Northern District of Illinois.

8. Venue is proper under 28 U.S.C. § 1391(b) and (c). Jurisdiction is proper over the Defendants, and upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

9. Plaintiff is a Wisconsin limited liability company, having its principal place of business at 301 S. Westfield, Suite 200, Madison, WI 53717. Plaintiff sells dietary supplements, namely its well-known PREVAGEN® product.

10. Upon information and belief, Defendant PETA, LLC d/b/a The HCF Company is a Nevada limited liability company having its principal place of business at 311 West 3rd Street, Carson City, NV 89703. Defendant PETA, LLC markets and sells a dietary supplement product called "HAPPY CALM FOCUSED." HAPPY CALM FOCUSED is a competitor of Plaintiff's PREVAGEN product.

11. Upon information and belief, Defendant Justin Peta is an individual residing at 17 Mutiny PL, Key Largo, FL 33037, and is the President, CEO and Manager of PETA, LLC. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12. Plaintiff sells a natural supplement under the brand name PREVAGEN, which is dedicated to the promotion of mental health.

13. Plaintiff has advertised its PREVAGEN product extensively, and sells primarily over the Internet.

14. As a result of its extensive promotional activities, Plaintiff has created substantial good will in its PREVAGEN trademark. Consumers associate the PREVAGEN mark with high quality supplement products which originate from Plaintiff.

15. Because Plaintiff's marketing of PREVAGEN is primarily Internet-based, Plaintiff has an especially compelling need to maintain an online presence that allows it to effectively disseminate accurate and truthful information to consumers.

16. Plaintiff is the owner of U.S. Trademark Registration No. 3,349,744 for "PREVAGEN" which is used in connection with "dietary supplements."

### Defendants' Websites

17. Defendants (or their agents) own or control at least three (3) websites at issue in this case: <happycalmfocused.com>; <realbraintruth.com>; and <brainsupplementfacts.com>.

18. The site <www.happycalmfocused.com> is Defendants' main site. This site is where Defendants' HAPPY CALM FOCUSED product is sold.

19. Upon information and belief, the site <realbraintruth.com> is also controlled or owned by Defendants, though Defendants use a proxy service to hide their identity as the owner of this domain name.

20. Upon information and belief, the site <brainsupplementfacts.com> is also controlled and owned by Defendants, though Defendants use a proxy service to hide their identity as the owner of this domain name

### www.RealBrainTruth.com

21. Defendants surreptitiously registered the <realbraintruth.com> domain name using a third-party proxy service. However, upon information and belief, the website located at

4

<realbraintruth.com> is sponsored and controlled by the Defendants, and the content therein was created by Defendants or their agents.

22. <Realbraintruth.com> states that it is published by "a dedicated group of private health professionals who believe in no-nonsense natural health." It purports to "provide[] [consumers with] a detailed list of reviews for some of the best brain supplements." Its "recommendation is based on our personal findings to mark a clear choice for you and your family's brain supplement needs."

23. However, according to the website, "[the health professionals] have omitted [their] names and pictures from this profile page to protect [their] privacy."

24. Upon information and belief, the "dedicated group of private health professionals" identified by Defendants are not "health professionals" and have not conducted the product reviews described on <Realbraintruth.com>.

25. The site goes on to state that "[n]one of the companies behind the brain supplements reviewed here have paid our team for this effort. The reviews listed here are based on our opinion in the natural health field. These reviews are not maintained or endorsed by their respective product companies."

26. The website located at <Realbraintruth.com> is an advertisement for Defendants' HAPPY CALM FOCUSSED product and the opinions expressed on <Realbraintruth.com> are not unbiased or unpaid, as Defendants claim.

27. Defendants do not disclose their ownership, control or affiliation with the <Realbraintruth.com> site. Doing so would greatly undermine the effectiveness of Defendants' advertising message (*i.e.* a seemingly independent and unbiased review site which ranks Defendants' product consistently as the #1 "recommended" product). Defendants mislead

5

consumers into believing that the site is entirely unbiased and independent, when in fact it was created, and is controlled and owned, by Defendants.

28. <Realbraintruth.com> is peppered with links to Defendants' <HappyCalmFocused.com> site, where the HAPPY CALM FOCUSED product is sold.

### www.BrainSupplementFacts.com

29. Defendants surreptitiously registered the <brainsupplementfacts.com> domain name using a third-party proxy service. However, the website located at <brainsupplementfacts.com> is sponsored and controlled by the Defendants, and the content therein was created by Defendants.

30. <Brainsupplementfacts.com> follows the pattern of <realbraintruth.com> by combining unbiased "reviews" from "health professionals" with direct consumer comments and feedback.

31. Defendants represent on <brainsupplementfacts.com> that they "do not sell [their] rankings as they are combined calculations of expert opinion and community contributed ratings." Upon information and belief, the rankings are not combined calculations of expert opinion and community contributed ratings.

32. Upon information and belief, the "health professionals" identified by Defendants are not health professionals at all and have not conducted the product reviews described on <brainsupplementfacts.com>.

33. The website located at <brainsupplementfacts.com> is an advertisement for Defendants' HAPPY CALM FOCUSSED product and the opinions expressed on <brainsupplementfacts.com> are not unbiased or unpaid, as Defendants claim.

34. Defendants do not disclose their ownership, control or affiliation with the <Brainsupplementfacts.com> site. Doing so would greatly undermine the effectiveness of Defendants' advertising message (*i.e.* a seemingly independent and unbiased review site which ranks Defendants' product consistently as the #1 "recommended" product). Defendants mislead consumers into believing that the site is entirely unbiased and independent, when in fact it was created, and is controlled and owned, by Defendants.

35. <brainsupplementfacts.com> is peppered with links to Defendants' <HappyCalmFocused.com> site.

### Defendants' Additional Wrongful Conduct

36. Plaintiff's main source of business is online consumers searching for its PREVAGEN product via web search engines such as Google and Yahoo!.

37. Google, Yahoo! and other companies operate Internet search engines which allow Internet users to locate websites that correspond with entered "keywords," or search terms. By using search engines such as Google and Yahoo, Internet users enter the subject matter they are interested in, the companies they are looking for, or the goods and services they wish to buy. As part of its business, Google offers a keyword-triggered advertising program called "AdWords." AdWords enables advertisers to purchase certain keywords. When an Internet user enters those keywords in Google's search engine, the AdWords program generates links, known as "Sponsored Links," to the advertisers' websites. Sponsored links appear at the top and on the margins of Google's search-result pages. In many instances, the search results pages are designed so that the "Sponsored Link" display is inconspicuous, confusing and ambiguous so it is not apparent who "sponsors" these links and whether a sponsor of the link is associated in any way with the company that is the subject of the search. Whenever

7

an Internet user clicks on a Sponsored Link, the corresponding advertiser must pay Google. The same or substantially similar policies also hold true for other search engines such as Yahoo!, MSN, and AOL.

38. Upon information and belief, Defendants paid for the keyword "PREVAGEN" so that links to Defendants' websites appear as "Sponsored Links" when a consumer searches for "PREVAGEN."

39. Defendants' use of Plaintiff's registered trademark has created a likelihood of confusing consumers, and has negatively affected the reputation of Plaintiff and the PREVAGEN brand.

40. Defendants engaged in the systematic and continuous posting of blog posts and fake "press releases" linking to its fake "review" websites in an effort to boost those sites' rankings in major search engines.

41. Upon information and belief, the consumer comments posted throughout the <brainsupplementfacts.com> website were created by Defendants, their agents or paid affiliates.

## COUNT I

**(Trademark Infringement – 15 U.S.C. § 1114(a))**

42. Plaintiff repeats and re-alleges paragraphs 1-41 above, as if set forth in full herein.

43. PREVAGEN is a federally registered trademark.

44. Plaintiff owns all rights, title, interest and goodwill associated with the PREVAGEN trademark.

45 At all times complained of herein, Defendants were aware of Plaintiff's rights in the PREVAGEN mark.

46. Defendants used the PREVAGEN mark in commerce without Plaintiff's knowledge or consent.

47. Defendants used Plaintiff's trademark in a manner calculated to capture initial consumer attention and to direct such attention to the Defendants' site, in the promotion of Defendants' competing product, at the expense of viewers looking for PREVAGEN and to the detriment of Plaintiff.

48. Defendants' use of the PREVAGEN mark has been willful, deliberate, intended to benefit Defendants at Plaintiff's expense, and made in bad faith.

49. Defendants' use of the PREVAGEN mark is likely to cause confusion in violation of Plaintiff's rights under 15 U.S.C. § 1114.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to loss of goodwill and lost profits.

51. The quantity and quality of Defendants' actions, as well as the implications on consumer health caused thereby, render this an "exceptional" case under the Lanham Act.

52. The aforementioned actions and activities of Defendants caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

53. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's adoption and use of the infringing PREVAGEN mark.

## COUNT II

**(Unfair Competition -- 15 U.S.C. § 1125(a))**

54. Plaintiff repeats and re-alleges paragraphs 1-53 above, as if set forth in full herein.

9

55. Defendants made false and misleading statements of fact about the nature and characteristics of Plaintiff's PREVAGEN product.

56. Defendants published advertisements which purport to "rank" Plaintiff's PREVAGEN product (and other competing products), and provide "unbiased" reviews from "health professionals." Those "rankings" and "unbiased" reviews are false and misleading.

57. Defendants caused their false and misleading statements to enter interstate commerce.

58. Defendants' statements have a tendency to deceive, and upon information and belief have in fact deceived, a substantial segment of its audience.

59. The deception caused by Defendants' statements is material in that it is likely to influence purchasing decisions.

60. Defendants' conduct has been willful, wanton, reckless and in total disregard for Plaintiff's rights.

61. The aforementioned actions and activities of Defendants caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

62. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## COUNT III

### (False Advertising -- 15 U.S.C. § 1125(a))

63. Plaintiff repeats and re-alleges paragraphs 1-62 above, as if set forth in full herein.

64. Defendants made numerous false and misleading descriptions or representations of fact in the commercial advertising and promotion of their own product.

65. Defendants caused their false and misleading statements to enter interstate commerce.

66. Defendants' statements have a tendency to deceive, and upon information and belief have in fact deceived, a substantial segment of its audience.

67. The deception caused by Defendants' false statements is material in that it is likely to influence purchasing decisions.

68. Defendants' conduct has been willful, wanton, and reckless.

69. The aforementioned actions and activities of Defendants caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

70. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## COUNT IV

**(Violation of the Deceptive Trade Practices Act of Illinois, 815 ILCS 510/2**)

71. Plaintiff repeats and re-alleges paragraphs 1-70 above, as if set forth in full herein.

72. Defendants made numerous false and misleading representations regarding the characteristics of both Plaintiff's and Defendants' products.

73. Defendants' false and misleading representations are causing likelihood of confusion or of misunderstanding as to the source, sponsorship approval or certification of Defendants' goods.

74. Defendants' advertising falsely represents that Plaintiff's product is inferior and dangerous.

11

75. Defendants' advertising purports to be independent and "unbiased" when it grants Defendants' product with fake and imaginary distinctions created solely as a marketing gimmick.

76. Defendants advertise various literal and implied claims that its product is superior to Plaintiff's PREVAGEN product.

77. Defendants claim that its product and Plaintiff's PREVAGEN product were reviewed by a team of unbiased "health professionals" and "experts." Upon information and belief, those statements are false.

78. Defendants caused their false and misleading statements to enter interstate commerce.

79. Defendants' statements have a tendency to deceive, and upon information and belief have in fact deceived, a substantial segment of its audience.

80. Defendants' conduct has been willful, wanton, and reckless.

81. The aforementioned actions and activities of Defendants caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

82. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## COUNT V

### (Commercial Disparagement)

83. Plaintiff repeats and re-alleges paragraphs 1-82 above, as if set forth in full herein.

84. Defendants made several statements about Plaintiff's goods which are untrue or misleading and are made to influence or tend to influence the public to not buy those goods.

85. Defendants demonstrate a pattern or practice of disparaging other competitors by alleging that their products are inferior in quality, dangerous, or "scams."

86. The aforementioned actions and activities of Defendants caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

87. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## COUNT VI

### (Defamation *Per Se*)

88. Plaintiff repeats and re-alleges paragraphs 1-87 above, as if set forth in full herein.

89. Upon information and belief, Defendants made, or paid agents to make, false representations about Plaintiff and Plaintiff's product.

90. Defendants' false representations constituted an unprivileged publication to numerous third parties, specifically targeting consumers and Plaintiff's customers.

91. For example, Defendants (or their agents) "warn" consumers with statements such as: "be warned of this product and company its borderline scam artists running things."

92. Defendants' false representations assert that Plaintiff's PREVAGEN product is dangerous and requires a warning to consumers.

93. Defendants' false representations impute a lack of integrity in the discharge of Plaintiff's business operations.

94. Defendants' statements harm Plaintiff in its profession.

95. Defendants published their false representations with at least a reckless disregard as to their truth or falsity.

13

96. Upon information and belief, Defendants published their false representations with actual malice and intent to harm Plaintiff's reputation.

97. As a result of Defendants' publication of *per se* defamatory statements, Plaintiff has suffered actual damages including, but not limited to lost sales, costs associated with dealing with and refuting said defamatory statements, and irreparable harm to Plaintiff's good will and reputation.

98. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## COUNT VII

### (Tortious Interference With Prospective Business)

99. Plaintiff repeats and re-alleges paragraphs 1-98 above, as if set forth in full herein.

100. Plaintiff had a reasonable expectation of entering into a valid business relationship with one or more individuals or organizations.

101. Defendants knew of the foregoing expectancy.

102. Defendants intentionally and unjustifiably interfered to prevent the expectancy from being fulfilled.

103. As a result of Defendants' actions, Plaintiff has been damaged.

104. Upon information and belief, Justin Peta supervises, directs, actively participates in, knowingly causes, and has a financial interest in PETA, LLC's activities as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

a. that Defendants, and their officers, directors, principals, agents, servants, employees, successors, assigns, affiliates, licensees, manufacturers, distributors, and all that are in active concert or participation with it, or any of them, be preliminary and permanently enjoined from:

 1. infringing Plaintiff's PREVAGEN trademark, including through use of the paid AdWords, or any variation thereof which is confusingly similar to Plaintiff's trademark;

 2. making any statement or representation whatsoever with respect to the infringing goods at issue that either falsely designates Plaintiff as the origin of the goods or is otherwise false or misleading;

 3. otherwise making unauthorized use of or infringing upon the PREVAGEN trademark or other trademarks of Plaintiff;

 4. any other conduct that would cause or is likely to cause confusion, mistake, or misunderstanding as to the source, affiliation, connection, or association of Defendants' goods with Plaintiff or Plaintiff's goods;

 5. competing unfairly with Plaintiff in any manner; and

 6. engaging in any other activity, including the effectuation of assignments or transfers of their interests in counterfeits, simulations, reproductions, copies, or colorable imitations of the PREVAGEN trademark, or any other intellectual property of Plaintiff, including the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth herein;

b. that PETA, LLC deliver up during the pendency of this action and for destruction upon entry of judgment any and all copies of materials used by PETA, LLC to advertise, promote, or solicit sales of its goods using the designation PREVAGEN;

c.  that Defendants, and their officers, directors, principals, agents, servants, employees, successors, assigns, affiliates, licensees, manufacturers, distributors, and all that are in active concert or participation with it, or any of them, be preliminarily and permanently enjoined from:

    1.  publishing false and misleading representations concerning Defendants' product and Defendants' competitors' products, including without limitation, use of fake reviews and product endorsements;

d.  that the Court award to Plaintiff the damages caused to Plaintiff by Defendants' unlawful activities, including exemplary damages;

e.  that the Court order Defendants to account for and pay over to Plaintiff all profits realized by Defendants in connection with its unlawful activities;

f.  that Defendants be ordered to pay Plaintiff punitive damages as provided by law;

g.  that Defendants be ordered to pay Plaintiff the costs of this action and reasonable attorneys' fees and investigatory fees;

h.  that Defendants be ordered to pay Plaintiff prejudgment interest;

i.  that the Court enter judgment in favor of Plaintiff granting equitable and injunctive relief over the activities complained of; and

j.  such other relief as this Court deems to be just and proper.

Dated: March 8, 2013　　　　　　　　　　　　　　　Respectfully Submitted,

   /s/ Ryan M. Kaiser
Ryan M. Kaiser (#6289873)
Amin Talati, LLC
55 W. Monroe St., Suite 3400
Chicago, IL 60603
Ph: (312) 327-3328
Fax: (312) 884-7352

Attorneys for Plaintiff